# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                                                  Case No. 1:22-cr-00767-KWR-1

MARC CANDELARIA,

     Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon the Government's Motion *in Limine* for a pretrial ruling ordering that Defendant is precluded from asserting the marital communications privilege at trial, filed October 6, 2023 **(Doc. 62)**.  For the reasons stated herein, the Court finds that the Government's motion is **GRANTED IN PART**.

## BACKGROUND

Defendant Marc Candelaria was indicted on a two count Indictment for bank robbery in violation of 18 U.S.C. §2113(a) and bank fraud in violation of 18 U.S.C. §1344(2).

On October 6, 2023, the Government filed a Motion *in Limine* for a pretrial ruling ordering that Defendant is precluded from asserting the marital communications privilege at trial (Doc. 62) over the testimony of his ex-wife, M.H.  On October 18, 2023, Defendant filed a response, asking this Court to deny the United States' motion and allow Defendant to assert the marital communications privilege at trial (Doc. 68).

## LEGAL STANDARD

According to the principles of common law, courts recognize two separate forms of marital privilege: the marital communications privilege and the martial testimonial privilege.  *United States v.*

*Montague*, 421 F.3d 1099, 1103 (10th Cir. 2005) (quoting *United States v. Bahe*, 128 F.3d 1440, 1441-42 (10th Cir. 1997)); *see* Fed.R.Evid. 501.

"The marital communications privilege covers all confidential communications made during a valid marriage with a few exceptions, including communications not made in absolute confidence and statements made as part of a joint criminal enterprise that is planned or in progress." *United States v. Melot*, No. CV 09-0752 JCH/WPL, 2012 WL 12898791 (D.N.M. Aug. 6, 2012) citing, *United States v. Short*, 4 F.3d 475, 478 (7th Cir. 1993), *United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984). Either spouse can assert the marital communications privilege to prevent the other from testifying as to confidential communications made during a marriage. *Bahe*, 128 F.3d at 1442. "The party seeking to overcome the privilege has the burden of establishing that the communications were not intended to be confidential." *Montoya v. City of Albuquerque*, No. CV 03–0261 JB/RHS, 2004 WL 3426435, at *5 (D.N.M. May 18, 2004). Like most privileges, the marital privilege must be narrowly construed. *Neal*, 743 F.2d at 1447 citing, *United States v. Nixon*, 418 U.S. 683 (1974). The marital communications privilege, however, does not apply if a communication due to the circumstances or its nature was not intended to be confidential, *e.g.*, made in the presence of a third party. *Wolfe v. United States*, 291 U.S. 7, 14 (1934); *Blau v. United States*, 340 U.S. 332, 333 (1951).

The marital communications privilege "generally, extends only to utterances, and not to acts." *Bahe*, 128 F.3d at 1443 citing, *Pereira v. United States*, 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed. 435 (1954). "[T]he majority rule among state and federal courts holds that all acts intended to convey a message are privileged." *Id*. citing, *Developments in the Law–Privileged Communications*, 98 Harv. L.Rev. 1563, 1572 (1985); *see*, *e.g., United States v. Estes*, 793 F.2d 465, 467 (2d Cir.1986) (observing that acts intended to convey a confidential message are protected by the privilege); *United States v. Robinson*, 763 F.2d 778, 783 (6th Cir.1985); *United States v. Ferris*, 719 F.2d 1405, 1408 (9th

2

Cir.1983); *United States v. Smith*, 533 F.2d 1077, 1079 (8th Cir.1976); *United States v. Lewis*, 433 F.2d 1146, 1150 (D.C.Cir.1970); *see also* 2 Stone & Taylor § 5.10 at 5–18 (stating that the implication of *Pereira* is that communicative acts may be covered by the privilege, citing several federal decisions suggesting that communicative acts are covered, but concluding that the federal law "is not well settled").  The marital communications privilege extends to "physical acts that are entirely communicative, such as sign language." *Bahe*, 128 F.3d at 1443 citing, *Neal*, 743 F.2d at 1448 (Logan, J., concurring).  According to Wright and Graham, "[i]f oral or written expression is the core of the concept of a 'communication' for purposes of the marital privilege, the first extension of that concept would include what might be called '801(a)(2) statements' "—" 'non-verbal conduct of a person if it is intended ... as an assertion.'"  *Id*. citing, 25 Wright & Graham § 5577 at 637 (quoting Fed.R.Evid. 801(a)(2)).

The marital testimonial privilege permits one spouse to decline to testify against another during a marriage.  *Bahe*, 128 F.3d at 1442.  This privilege "prohibits testimony by one spouse against another in criminal cases; it is designed to protect marital harmony at the time the testimony is demanded and to protect a witness from the difficult choice of incriminating a spouse or going to jail for contempt." *United States v. DeLeon*, No. CR 15-4268 JB, 2018 WL 2093195 (D.N.M. May 3, 2018) citing, Stephen A. Saltzburg *et al*., Federal Rules of Evidence Manual § 501.02[8] (11th ed. 2017).  However, the marital testimonial privilege does not prevent one spouse from voluntarily testifying against the other. *Id*.; *Trammel v. United States*, 445 U.S. 40, 53 (1980).  Ultimately, testimonial privilege terminates when a marriage ends.  *Bahe*, 128 F.3d at 1442.  By contrast, the confidential communications privilege continues even after a marriage has ended.  *Id*.

## DISCUSSION

### I.      Both Parties Agree That Defendant is Precluded From Asserting Privilege Over Observations

The Government first asserts, and Defendant does not dispute that M.H. may testify regarding her first-hand observations of Defendant's acts to the extent that these acts do not constitute a communication.  Defendant specifically agrees that observations numbers two through eleven on pages six and seven of the United States' Motion *in Limine* (Doc. 62) are not covered by the marital communications privilege.[1]  *See* Doc. 68 at 5-6.  Therefore, this Court finds that Defendant is precluded from asserting the marital communications privilege over M.H.'s testimony as to these observations.

### II.     Defendant Can Assert the Marital Communications Privilege Over Conversations with M.H.

Next, the Government seeks a pretrial ruling that M.H. is permitted to testify as to a conversation between her and Defendant on October 30, 2021.  Specifically, the Government claims Defendant told M.H. he had received an unexpected telephone call from his employer, Los Alamos National Labs, asking him to report to work.  Doc. 62 at 2.  Defendant subsequently told M.H. he would report to work and return home directly after.  *Id*.  The Government asserts that at the time of this communication, Defendant no longer worked at Los Alamos National Labs and therefore, this communication could not have been made in confidence to M.H. since it was false and likely an alibi for the bank robbery.  *Id*. at 4-5.  Additionally, Defendant told M.H. that "Homeland Security Agents" seized his work boots,

---

[1] M.H.'s observations that Defendant has agreed are not covered by the marital communications privilege include: (2) M.H. called Defendant many times to obtain an update as to his whereabouts on October 30, 2021, (3) Defendant did not return home until the day after the October 30, 2021 bank robbery, (4) M.H. purchased the vehicle used by Defendant, (5) Defendant was the only person known to drive the vehicle, (6) M.H. did not prepare the handwritten demand note in the vehicle, (7) the handwritten demand note was not used to test security at M.H.'s business, Goldhenn Jewelry, (8) Defendant owned boots similar to those used by the bank robber, (9) Defendant appeared to have the same body type as the bank robber, (10) Defendant held a pen in the same way the bank robber did, (11) the bank robber's nose appeared wider than Defendant's nose because of a tightly worn neck gaiter which compressed the robber's nose.

4

searched him, and detained him, which was a fabrication designed to distance himself from evidence related to the bank robbery.  *Id*.  Defendant contends that these communications did not occur in the presence of a third party, nor did he intend to transmit them to a third party.  Doc. 68 at 4-5.  Furthermore, the Government's theory as to untruthfulness is not an exception to the marital communications privilege.  *Id*.  Therefore, the marital communications privilege is applicable, and the Court should deny the Government's motion *in limine* as to this testimony.  This Court agrees with Defendant and finds that the martial communications privilege applies to these two communications.

The marital communications privilege applies to words and acts intended to be a communication, during a valid marriage, and in confidence, *i.e.*, not statements made before or likely to be heard by a third party.  *See Bahe*, 128 F.3d at 1442; *Trammel*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *United States v. Marashi*, 913 F.2d 724, 729-30 (9th Cir. 1990); *United States v. Jarvison*, 409 F.3d 1221, 1231-32 (10th Cir. 2005).  The party seeking to overcome the marital communications privilege has the burden of establishing that the communications were not intended to be confidential.  *Montoya v.* 2004 WL 3426435 citing, *Wolfle*, 291 U.S. at 15 ("Communications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged."); *Blau*, 340 U.S. at 333.

Here, neither the Government nor Defendant disputes that both instances are communications for the purposes of the marital communications privilege.  Secondly, neither disputes that Defendant and M.H. were validly married when the communications were made in 2021.  As to the third requirement, confidentiality, while the Government asserts that these communications were misrepresentations or falsehoods and therefore, Defendant did not make these statements in confidence, this is a misinterpretation or misunderstanding of the "confidentiality" requirement of the marital communications privilege.  "In confidence" within the context of the martial communications privilege

has long been held to mean that the underlying communication is confidential between spouses, *i.e.*, not made or intended to be made in the presence of a third party, which waives the presumption of confidentiality.  *Bahe*, 128 F.3d at 1443-44; *Wolfle*, 291 U.S. at 15; *Blau*, 340 U.S. at 333; *see generally Trammel*, 445 U.S. 40.  "In confidence" does not mean, as the Government asserts, that the underlying communication must be truthful or honest as determined by the Court.  Such a holding would force courts to become arbiters of the truthfulness of communications between spouses and would not "reflect[] the value our society places on uninhibited communication between spouses." *United States v. Short*, 4 F.3d 475, 478 (7th Cir. 1993).  Nor does the Government provide case law supporting this assertion.

The Government also argues Defendant communicated these falsehoods to M.H. with the intent that she share this information with others.  Doc. 60 at 5-6.  While M.H. may have later shared these communications between her and Defendant with third parties after the fact, this does not preclude Defendant from asserting the marital communications privilege as to these conversations between him and his then-wife.  If such subsequent disclosures destroyed confidentiality, all marital communications would be at risk of discovery through simple disclosure to a third party.  The record does not support a finding that Defendant intended to make or made these communications in the presence of a third party.  M.H.'s sharing of these communications with third party(ies) after the fact does not destroy Defendant's marital communications privilege nor has the Government presented evidence establishing that Defendant intended her to do so.

Ultimately, "[t]he cost of the privilege is the reduction in truthful disclosure about criminal activity." *Id*. citing, *United States v. Byrd*, 750 F.2d 585, 589 (7th Cir. 1984).  While the marital communications privilege seeks to protect the institution of marriage, the truthfulness of a communication or the status of the Candelaria's marriage at the time is irrelevant for the purposes of

determining whether this privilege applies. *Id.*, at 592. The marital communications privilege is subject to few exceptions, *e.g.*, criminal collusion between spouses or sexual abuse. *Id.*; *Melot*, 2012 WL 12898791 at 3; *Neal*, 743 F.2d at 1447; *United States v. Cameron*, 556 F.2d 752, 755 (5th Cir. 1977); *see generally Bahe*, 128 F.3d 1440. The Government does not argue that a well-established exception applies, nor does it cite case law supporting its contention that for the marital communications privilege to apply, the underlying communication must be truthful. Therefore, this Court finds the Government has failed to satisfy its burden. Defendant can assert the marital communications privilege as to the October 30, 2021, conversation between him and M.H. regarding a purported telephone call he received from his employer asking that he report to work. Furthermore, Defendant can assert the marital communications privilege as to the conversation with M.H. regarding the purported search, detaining, and seizure of his boots by "Homeland Security Agents" referenced on page two of Document 62.

### III.    Defendant Cannot Assert the Marital Communications Privilege Regarding Cell Phone Location Information

The Government seeks a pretrial ruling that Defendant is barred from asserting the marital communications privilege as to Defendant disabling his cell phone location information with M.H. at 11:35 A.M. on October 30, 2021, the date of the bank robbery. *Id*. M.H. is expected to testify that the spouses shared their cell phone location information with each other since 2016. *Id*. As a result of Defendant disabling his location information, M.H. became concerned and proceeded to call Defendant as to his whereabouts without an answer. *Id*. The United States, therefore, seeks a ruling that M.H. may testify as to Defendant disabling his cell phone location information on the date in question.

Defendant asserts that his disabling of his shared cell phone location information with M.H. is a communication intended to convey a message – a physical act that is entirely communicative. *See Neal*, 743 F.2d at 1448; *Pereira*, 347 U.S. at 6. Therefore, M.H.'s observation that Defendant turned off his

location information is not an observation, but rather a confidential communication between the two spouses and therefore, privileged. This Court finds that the marital communications privilege does not apply.

Here, neither the Government nor Defendant disputes that Defendant and M.H. were validly married in 2021. Furthermore, neither party disputes the confidentiality of the disabled location information, as the location information was between Defendant and M.H. and not made or intended to be made in the presence of a third party.[2]

In *Bahe*, the Tenth Circuit ruled that while the Supreme Court in *Pereira* held that the marital communications privilege, "generally extends only to utterances, and not to acts…[,]" the majority rule among state and federal courts holds that all acts intended to convey a message are privileged." *Bahe*, 128 F.3d at 1440 citing, *Pereira*, 347 U.S. at 361; *Developments in the Law–Privileged Communications*, 98 Harv. L.Rev. 1563, 1572 (1985); *see, e.g., Estes*, 793 F.2d at 467; *Robinson*, 763 F.2d at 783; *Ferris*, 719 F.2d at 1408; *Smith*, 533 F.2d at 1079; *Lewis*, 433 F.2d at 1150; *see also* 2 Stone & Taylor § 5.10 at 5–18. The marital communications privilege extends to "physical acts that are entirely communicative, such as sign language." *Bahe*, 128 F.3d at 1443 citing, *Neal*, 743 F.2d at 1448.

---

[2] While the presence of third parties such as telecommunications companies is often inevitable with regard to electronic communications, such a presence does not necessarily destroy the confidentiality of marital communications. In such instances, "courts often rely on *Wolfle*'s pronouncement that the nature and circumstances surrounding a communication must be considered" and look to whether person(s) knew communications would be monitored, were accessible by others, etc. *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-CV-02868-MSK-KMT, 2014 WL 183303 * 6 (D. Colo. Jan. 12, 2014). Just because the presence of a third party is necessary for delivery or facilitation of a communication and has access to its content, does not on its own destroy privilege. *Sports Rehab Consulting, LLC v. Vail Clinic, Inc*, No. 19-CV-02075-WJM-GPG, 2022 WL 17976702 * 14 (D. Colo. Oct. 21, 2022), report and recommendation adopted sub nom. Sports Rehab Consulting, LLC, No. 19-CV-02075-WJM-GPG, 2023 WL 2824300 (D. Colo. Mar. 13, 2023) citing, *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 256 (S.D.N.Y. Bankr. 2005). Therefore, marital communications privilege can apply to e-mails and text messages, for example. *See generally VanMeter v. Briggs*, No. CIV 18-0970 RB/JHR, 2019 WL 3819167 (D.N.M. Aug. 14, 2019); *United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir.2004); *United States v. Troxel*, 564 F. Supp. 2d 1235 (D. Kan. 2008). Marital communications themselves are presumed to be confidential, and the Government here has not challenged this presumption nor alleged that the location information was not made in confidence. Therefore, this Court finds the spouses had a reasonable expectation of privacy and the presence of a third party, *e.g.*, a telecommunications provider, also aware of the parties' locations, does not destroy confidentiality, given the unique sharing of location information between only the two spouses. *Id.*

In defining "communication" under the marital communications privilege, the Tenth Circuit has turned to § 5577 Elements of the Privileges—"Confidential Communications", for guidance. *Bahe*, 128 F.3d at 1443. "If oral or written expression is the core of the concept of a 'communication' for purposes of the marital privilege, the first extension of that concept would include what might be called '801(a)(2) statements'" – " 'non-verbal conduct of a person, if it is intended…as an assertion.'" *Id*. citing, 25 Wright & Graham § 5577 at 637 (quoting Fed.R.Evid. 801(a)(2)). Looking specifically at Fed.R.Evid. 801(a), "'Statement' means a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."

Although some courts have deemed marital communications to include observations by a spouse, "things that one has little choice but to reveal to a spouse in the course of a normal married life," many courts seem to find difficulty in considering such observations a "communication." *Id*. citing, *State v. Edwards*, 2011 MT 210, 361 Mont. 478, 260 P.3d 396, 401 (2011). Regarding such observations, federal cases on point seem to reject the notion that the marital communications privilege extends to "marital observations." In *United States v. Long*, the Eighth Circuit rejected the argument that the marital communications privilege extended to a wife's observations as to her husband's absence at the time of the theft in question. 468 F.2d 755, 757 (8th Cir. 1972). Similarly, in *Lewis*, the United States Court of Appeals for the D.C. Circuit declined to extend the marital communications privilege to a wife's observation of her husband's return home with a sawed-off shotgun in the early morning hours. 433 F.2d at 1150-51.

Here, this Court finds Defendant's disabling of his shared location with M.H. is not a communication for the purposes of the marital communications privilege. The marital communications privilege includes oral and written communication, including non-verbal conduct such physical acts that are entirely communicative, *e.g.*, sign language. *Bahe*, 128 F.3d at 1443 citing, *Neal*, 743 F.2d at 1448.

Disabling one's location information is not a written or oral communication, as M.H. did not receive anything oral or written once Defendant's location was turned off, but rather non-verbal conduct. However, unlike non-verbal conduct such as sign language, Defendant's location information was not only passive in nature compared to sign language, but without any clear or distinguishable message or assertion.  Sign language intentionally and actively communicates a message to a recipient.  Here, Defendant has not established that the disabling of his location information was intended to convey a message or assertion to M.H.  Under 801(a)(2), even if Defendant intended to convey a message or assertion, it is not clear what assertion Defendant was making to M.H.  Did Defendant intend to communicate that he was unavailable?  That he no longer wanted M.H. accessing his location?  That his cell phone was broken?  That Defendant was in a dispute with his wife?  That Defendant was injured or missing?  Unlike the recipient of non-verbal conduct such as sign language, here, M.H. was not aware that Defendant was communicating or intending to communicate a message.  M.H. simply happened to stumble upon her inability to see Defendant's location.  Only conduct and expressions intended to be a communication can be privileged.  *See United States v. Robinson*, 763 F.2d 778, 783 (6th Cir. 1985); *United States v. Ferris*, 719 F.2d 1405, 1408 (9th Cir.1983); *United States v. McCown*, 711 F.2d 1441, 1452 (9th Cir.1983); *United States v. Smith*, 533 F.2d 1077, 1079 (8th Cir.1976); *United States v. Hook*, 781 F.2d 1166 (6th Cir. 1986).  In this Court's discretion, the record does not support a finding that Defendant's disabling of his location information was communication intended to convey a message or assertion or entirely communicative.  *See Bahe*, 128 F.3d at 1443; *Neal*, 743 F.2d at 1448.  Therefore, M.H.'s testimony is admissible.

As in both *Long* and *Lewis*, other circuits have held that a wife's testimony as to her husband's absence or return home is not subject to the marital communications privilege and therefore, admissible. Since 2016, the Candelaria's had continuously shared their location information with each other.  Just as

in both *Long* and *Lewis*, M.H.'s observation as to her husband's absence and her inability to find his location is just that, an observation, rather than a confidential communication between the two. *Long*, 468 F.2d at 757; *Lewis*, 433 F.2d at 1150-51. Observations as to a spouse's activity(ies) have generally not been recognized by courts as included within the marital communications privilege. *United States v. Giavasis*, 805 F.2d 1037 *3 (6th Cir. 1986). Therefore, M.H.'s testimony as to her observation of Defendant's location is admissible.

In short, although Defendant's action is non-verbal conduct, the record does not support a finding that Defendant intended to communicate an assertion and if he did, what assertion he was making. Unlike oral, written, or physical acts that are entirely communicative, this Court cannot ascertain what assertion Defendant intended to make, if any. Furthermore, M.H.'s realization as to Defendant's absence is an admissible observation. Like most privileges, the marital privilege must be narrowly construed and therefore, this Court finds Defendant's disabling of his location information does not qualify as a communication for the purposes of the marital communications privilege. *See Neal*, 743 F.2d at 1447 citing, *Nixon*, 418 U.S. at 683. Defendant is barred from asserting the marital communications privilege as to this testimony from M.H.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Government's Motion *in Limine* for a pretrial ruling ordering that Defendant is precluded from asserting the marital communications privilege at trial, filed October 6, 2023 (Doc. 62), is **GRANTED IN PART**. For the reasons stated herein, the Court will not allow M.H. to testify as to the October 30, 2021, conversation between her and her husband regarding the purported phone call between him and Los Alamos National Lab. Furthermore, the Court will not allow M.H. to testify as to the telephone conversation between her and Defendant regarding his purported detention and search at Los Alamos National Labs by "Homeland Security Agents." Nor will

the Court allow M.H. to testify as to Defendant's comment to her regarding the seizure of his work boots by "Homeland Security Agents."

   M.H. may testify as to the following: (1) Defendant's shared location information on October 30, 2021; (2) M.H.'s attempted telephone calls to Defendant; (3) Defendant's return home on October 31, 2021; (4) M.H.'s purchase and Defendant's use of the 2017 Volkswagen; (5) whether M.H. prepared the handwritten demand note found in the vehicle; (6) whether the handwritten demand note was used to test security at Goldhenn Jewelry; (7) Defendant owned boots similar to those used by the bank robber; (8) Defendant appeared to have the same body type as the bank robber; (9) Defendant held a pen in the same way the bank robber did; (10) the bank robber's nose appeared wider than Defendant's nose because of a tightly worn neck gaiter; and (11) that she accessed photos of the October 30, 2021 bank robbery and her subsequent observations from these photos.

   This Court instructs the United States not to mention, refer to, interrogate about, or attempt to convey to the jury in any manner, either directly or indirectly, any excluded evidence.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE